1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

9
10  JOSEPH CHANDLER DAVALL,

11                              Petitioner,

12              v.

13  WARREN MONTGOMERY,

14                              Respondent.

15

| | |
|---|---|
| Case No. LACV 18-7252-DSF (LAL) | |
| **FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** | |

16

17      This Final Report and Recommendation[1] is submitted to the Honorable Dale S. Fischer,

18  United States District Judge, under the provisions of 28 U.S.C. § 636 and General Order 194 of

19  the United States District Court for the Central District of California.

20                              **I.**

21                        **PROCEEDINGS**

22      On August 17, 2018, Joseph Chandler Davall ("Petitioner") filed a Petition for Writ of

23  Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254.  On December 9,

24

25  _____

26  [1] This Court issues this Final Report and Recommendation to address certain points raised by Petitioner in his Objections to the original Report and Recommendation.  Importantly, Petitioner appears to have the mistaken belief that his original consent to proceed before the magistrate judge has authorized this Court to conduct all proceedings in this matter and issue a dispositive ruling.  (See Objections at 1.)  Although Petitioner voluntarily consented to have a magistrate judge conduct all proceedings in this matter, Respondent did not so consent.  Accordingly, pursuant to 28 U.S.C. §636, this Court shall submit this Final Report and Recommendation and Petitioner's Objections to the original Report and Recommendation for de novo review by the assigned District Judge.

2020, Petitioner lodged a proposed First Amended Petition ("FAP").[2]  On March 11, 2021,

following briefing by the parties, the previously assigned United States Magistrate Judge issued a

Report and Recommendation recommending that Petitioner be granted permission to file the

First Amended Petition as to Claims One through Seven of the FAP, but not as to Claim Eight.

On April 6, 2021, the assigned United States District Judge accepted the Report and

Recommendation, thereby allowing the filing of the FAP as to Claims One through Seven only.

On June 3, 2021, Respondent filed an Answer to the FAP.  On June 17, 2021, Petitioner filed a

Traverse.  Thus, this matter is ready for decision.

## II.

## PROCEDURAL HISTORY

On April 10, 2015, Petitioner was convicted after a jury trial in the Los Angeles County

Superior Court of one count of sexual assault of a child - rape,[3] one count of sexual assault of a

child - sexual penetration,[4] one count of forcible rape,[5] one count of sexual penetration by a

foreign object on a victim under the age of 14,[6] one count of assault to commit a felony during

the commission of a first degree burglary,[7] one count of first degree burglary,[8] and one count of

making criminal threats.[9]  (Clerk's Transcript ("CT") at 182-84, 186, 188-90, 211-13, 256.)  The

jury further found true allegations that during the commission of the forcible rape and the

penetration by a foreign object Petitioner personally engaged in the tying or binding of the

victim,[10] the victim was under the age of 14 and Petitioner was engaged in the commission of

---

[2] This Court does not detail the protracted procedural history between the filing of the Petition and the lodging of the First Amended Petition, as it is not relevant to this Court's consideration of Petitioner's claims.

[3] Cal. Penal Code § 269(a)(1).

[4] Cal. Penal Code § 269(a)(5).

[5] Cal. Penal Code § 261(a)(2).

[6] Cal. Penal Code § 289(a)(1)(b).

[7] Cal. Penal Code § 220(b).

[8] Cal. Penal Code § 459.

[9] Cal. Penal Code § 422.

[10] Cal. Penal Code § 667.61(b), (e).

first degree burglary,[11] and Petitioner committed great bodily harm on a victim under the age of 14,[12] and that during the commission of the burglary someone other than an accomplice was present in the residence.[13]  (CT at 184-87, 189, 211-12.)  On May 13, 2015, the trial court sentenced Petitioner to a state prison term of life without the possibility of parole.  (CT at 250-56.)

Petitioner appealed his convictions to the California Court of Appeal.  (Lodgments 2-7.)  On November 30, 2016, the California Court of Appeal affirmed the judgment.  (Lodgment 8.)  Petitioner then filed a petition for rehearing in the California Court of Appeal (Lodgment 9), which the court denied (Lodgment 10).

Next, Petitioner filed a petition for review in the California Supreme Court.  (Lodgment 11.)  On February 15, 2017, the California Supreme Court denied review.  (Lodgment 12.)

Petitioner then filed a petition for writ of certiorari in the United States Supreme Court.  (Lodgment 13.)  On October 2, 2017, the Supreme Court denied the petition.  (Lodgment 14.)

Petitioner next filed a habeas corpus petition in the Los Angeles County Superior Court.  (Lodgment 15.)  On February 26, 2020, the Los Angeles County Superior Court denied the petition.  (Lodgment 16.)

Then, Petitioner filed a habeas corpus petition in the California Court of Appeal.  (Lodgments 17-18.)  On July 10, 2020, the California Court of Appeal denied the petition.  (Lodgment 19.)

Finally, Petitioner filed a habeas corpus petition in the California Supreme Court.  (Lodgment 20-21.)  On November 10, 2020, the California Supreme Court denied the petition.  (Lodgment 21.)

///

///

///

---

[11] Cal. Penal Code § 667.61(d), (j)(1).

[12] Cal. Penal Code § 667.61(d), (j)(1).

[13] Cal. Penal Code § 667.5(c)(21).

3

**III.**

**SUMMARY OF THE EVIDENCE PRESENTED AT TRIAL**

Because Petitioner challenges the sufficiency of the evidence, this Court has independently reviewed the state court record.[14]  Based on this review, except where clarified in bracketed text, this Court adopts the factual discussion of the California Court of Appeal's opinion in this case as a fair and accurate summary of the evidence presented at trial:[15]

The victim, identified throughout the trial as "Jane Doe," testified that on March 21, 2014, she was 12 years old.  At around 10 or 11 p.m., her father and his friend picked her up from a friend's house to take her home.  During the drive, she saw a man she later identified as [Petitioner] walking down the street.  She saw [Petitioner] again when she got out of the car in front of her house.

Doe was dropped off at home and left alone.  She locked the door and went into her bedroom, where she spent some time on her cell phone before falling asleep.  She was awakened by a clicking noise and a pain and tingling in her side.  A man was on top of her, straddling her.  He looked like the man she had seen on her way home and in front of her house.  She screamed.  The man told her to stop screaming, and put something over her head to cover her face.  He turned her over and tied her hands behind her back.  When she struggled, he punched her in the stomach multiple times.  She heard the clicking sound and felt the tingling pain again.  The man stuck his fingers inside her vagina before turning her on her back and raping her.  When he was finished, he tied her legs together and said:  "'Now, I know where you live.  And I know what school you go to.  So if you tell anybody about this, I will have my boys come back and kill you.'"

---

[14] See Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997).

[15] "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (citing 28 U.S.C. § 2254(e)(1)).  Thus, Ninth Circuit cases have presumed correct the factual summary set forth in an opinion of the California Court of Appeal under 28 U.S.C. §2254(e)(1).  See, e.g., Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2009) (citations omitted).

After the attacker left, Doe lay on her bed in shock, afraid he would return. She wanted to call someone, but discovered her cell phone was gone.[16]  Doe's father came home shortly after the attack.  Doe told him what had happened, and he took her to a police station.  Doe made a report to Officer Eric Orosco, who testified she was upset, trembling, shaky and crying.  The officer transported her to the hospital where she underwent a physical exam that included a sexual assault exam.

Carey Zuniga, a registered nurse with a specialty in forensics, conducted the exam.  She observed scratches and abrasions on Doe's back, shoulder, hip, stomach, arm and knee.  There was a small laceration on her hymen and another one near her vagina.  Zuniga took a buccal (cheek) swab from Doe to have as a reference for her DNA.  Zuniga then took swabs from Doe's neck, breasts, abdomen, thigh, external genitalia and vagina.  Zuniga also took multiple photographs of Doe and her injuries, and placed marks on a drawing to show the location of injuries surrounding Doe's vagina.

Maryam Nickooshiam, a senior criminalist for the Los Angeles County Sheriff's Department, received Doe's sexual assault kit from the evidence control section of the Sheriff's Department crime lab.  Nickooshiam screened the samples, finding evidence of blood, semen and sperm in the vaginal and external genitalia swabs.  She then extracted and amplified the DNA to obtain a profile. The profile she obtained indicated the samples in the kit were from two contributors.  On April 23, 2014, she received a buccal reference sample from [an individual named Joseph Davall] and profiled his DNA.  She compared his DNA profile to the DNA profile she developed from the sexual assault kit samples. Asked to relate her conclusions, she stated: "[T]he DNA profile from the sample is a mixture consistent with two contributors . . . one of whom is Jane Doe, the

---

[16] Her cell phone was later found in a bush outside the house.

[other] matches the profile from Joseph Davall."  She further stated that the probability of a random person matching the profile from the kit was one in 860 quadrillion.

Detective David Hardin testified that he ran a DMV records search in April 2014 after learning that [Petitioner] had become a suspect in the assault.  He found a Chevrolet pickup truck registered to [Petitioner].  Detective Hardin entered the truck's license plate into a system that collects data from cameras mounted on light posts throughout the city of Claremont.  The data showed that [Petitioner]'s vehicle had entered and exited Claremont 43 times between 2012 and 2014.  On March 21, 2014, at approximately 11:37 p.m. it was seen by a camera three-quarters of a mile from Doe's home.

Officer Rick Varney testified that [Petitioner] made an unsolicited statement to him when he was with [Petitioner] in a booking cell, taking a GPS device off [Petitioner]'s ankle.  [Petitioner] said he knew why one of the detectives was angry with him:  "'He must have two daughters that didn't like what I did.'"

(Lodgment 8 at 3-6.)

## IV.

## PETITIONER'S CLAIMS

Petitioner raises the following claims for habeas corpus relief:

(1) The prosecutor did not present sufficient evidence to establish the DNA sample tested by the criminalist belonged to Petitioner;

(2) The identification evidence was the product of an impermissibly suggestive procedure;

(3) Petitioner's trial counsel was ineffective;

(4) The prosecutor failed to establish the chain of custody for the victim's DNA sample;

(5) The trial court abused its discretion;

(6) Petitioner's appellate counsel was ineffective; and

(7) Cumulative error.

## V.

## STANDARD OF REVIEW

**A.      28 U.S.C. § 2254**

The standard of review that applies to Petitioner's claims is stated in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> (d)      An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  If these standards are difficult to meet, it is because they were meant to be. As the United States Supreme Court stated in Harrington v. Richter,[17] while the AEDPA "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings[,]" habeas relief may be granted only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts" with United States Supreme Court precedent.  Further, a state court factual determination must be presumed correct unless rebutted by clear and convincing evidence.[18]

///

///

///

---

[17] 562 U.S. 86, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011).

[18] 28 U.S.C. § 2254(e)(1).

**B.** **Sources of "Clearly Established Federal Law"**

According to <u>Williams v. Taylor</u>,[19] the law that controls federal habeas review of state court decisions under the AEDPA consists of holdings (as opposed to dicta) of Supreme Court decisions "as of the time of the relevant state-court decision." To determine what, if any, "clearly established" United States Supreme Court law exists, a federal habeas court also may examine decisions other than those of the United States Supreme Court.[20] Ninth Circuit cases "may be persuasive."[21] A state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law, if no Supreme Court decision has provided a clear holding relating to the legal issue the habeas petitioner raised in state court.[22]

Although a particular state court decision may be both "contrary to" and an "unreasonable application of" controlling Supreme Court law, the two phrases have distinct meanings under <u>Williams</u>.

A state court decision is "contrary to" clearly established federal law if the decision either applies a rule that contradicts the governing Supreme Court law, or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts.[23] If a state court decision denying a claim is "contrary to" controlling Supreme Court precedent, the reviewing federal habeas court is "unconstrained by § 2254(d)(1)."[24] However, the state court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."[25]

---

[19] 529 U.S. 362, 412, 120 S. Ct. 1495, 146, L. Ed. 2d 389 (2000).

[20] <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n.6 (9th Cir. 2000).

[21] <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600 (9th Cir. 1999).

[22] <u>Brewer v. Hall</u>, 378 F.3d 952, 955 (9th Cir. 2004); <u>see also</u> <u>Carey v. Musladin</u>, 549 U.S. 70, 77, 127, S. Ct. 649, 649, 166 L. Ed. 2d 482 (2006) (in the absence of a Supreme Court holding regarding the prejudicial effect of spectators' courtroom conduct, the state court's decision could not have been contrary to or an unreasonable application of clearly established federal law).

[23] <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam) (citing <u>Williams</u>, 529 U.S. at 405-06).

[24] <u>Williams</u>, 529 U.S. at 406.

[25] <u>Early</u>, 537 U.S. at 8.

State court decisions that are not "contrary to" Supreme Court law may be set aside on federal habeas review only "if they are not merely erroneous, but 'an <u>unreasonable</u> application' of clearly established federal law, or based on 'an <u>unreasonable</u> determination of the facts.'"[26] Accordingly, this Court may reject a state court decision that correctly identified the applicable federal rule but unreasonably applied the rule to the facts of a particular case.[27]  However, to obtain federal habeas relief for such an "unreasonable application," a petitioner must show that the state court's application of Supreme Court law was "objectively unreasonable" under <u>Woodford v. Visciotti</u>.[28]  An "unreasonable application" is different from merely an incorrect one.[29]

Where, as here, the California Supreme Court denied the claims without comment on direct review, the state high court's "silent" denial is considered to be "on the merits" and to rest on the last reasoned decision on the merits of these claims.  In the case of Claim Four, this Court looks to the grounds the California Court of Appeal stated in its decision on direct appeal.[30] With respect to Claims Three and Six, this Court looks to the grounds the California Court of Appeal stated in its decision on habeas corpus review.[31]

With respect to Claims One, Two, Five, and Seven, the state courts denied the claims on procedural grounds only.[32]  "Because the [California] courts did not reach the merits of [these]

---

[26] <u>Id.</u> at 11 (citing 28 U.S.C. § 2254(d)).

[27] <u>See</u> <u>Williams</u>, 529 U.S. at 406-10, 413.

[28] 537 U.S. 19, 27, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002).

[29] <u>Williams</u>, 529 U.S. at 409-10.

[30] <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-06, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991).

[31] <u>Cannedy v. Adams</u>, 706 F.3d 1148, 1156-59 (9th Cir. 2013) (holding that "look through" practice continues to apply on AEDPA review of California Supreme Court summary denials of habeas petition).

[32] Because the state courts denied these claims on procedural grounds, Respondent argues Claims One, Two, and Five are procedurally barred.  (Memorandum of Points and Authorities in Support of Answer ("Answer") at 11-15, 27-29, 38-39.)  This Court denies the claims without considering the procedural default issue, in part because it is unclear whether Petitioner's claims of ineffective assistance of counsel might be material to a showing of cause for his procedural default.  <u>See</u> <u>Lambrix v. Singletary</u>, 520 U.S. 518, 523-25, 117 S. Ct. 1517, 137 L. Ed. 2d 771 (1997) (judicial economy may counsel considering merits of claim first before addressing procedural bar issue); <u>Flournoy v. Small</u>, 681 F.3d 1000, 1004 n.1 (9th Cir. 2012) ("While we ordinarily resolve the issue of procedural bar prior to any consideration of the merits on habeas review, we are not required to do so when a petition clearly fails on the merits.").

claim[s], federal habeas review is not subject to the deferential standard that applies under AEDPA to 'any claim that was adjudicated on the merits in State court proceedings.'  Instead, the claim is reviewed *de novo*."[33]

## VI.

## <u>DISCUSSION</u>

**A.    DNA Evidence**

> **1.      Background**

In Claim One, Petitioner argues the prosecutor presented insufficient evidence to establish that the DNA sample tested by the criminalist came from Petitioner.  (FAP at 5, 20-22.)[34]  In Claim Four, Petitioner argues the prosecutor failed to establish an adequate chain of custody for the DNA sample collected from the victim during her sexual assault examination.  (FAP at 6, 28-30.)  Relatedly, in Claim Five, Petitioner argues the trial court abused its discretion when it denied a defense objection to the DNA evidence collected during the victim's sexual assault examination.  (FAP at 6, 28-30.)[35]

---

[33] <u>Cone v. Bell</u>, 556 U.S. 449, 129 S. Ct. 1769, 1784, 173 L. Ed. 2d 701 (2009) (citations omitted); <u>Tanner v. McDaniel</u>, 493 F.3d 1135, 1139 (9th Cir. 2007); <u>Mitcham v. Davis</u>, 103 F.Supp.3d 1091, 1100 (N.D. Cal. 2015) ("However, because the state court denied relief on procedural grounds and did not reach the merits of Petitioner's ineffective assistance of counsel subclaim, this Court's review of that subclaim is de novo, rather than subject to AEDPA's deferential standard that applies to any claim that was adjudicated on the merits in State court proceedings." (internal quotation marks and citation omitted)).

[34] This Court cites to the page numbers applied to the FAP by the electronic docketing system.

[35] Petitioner further argues the trial court abused its discretion by admitting the DNA evidence despite the prosecutor's failure to establish a proper foundation under the <u>Kelly/Frye</u> test (FAP at 6, 28-30).  <u>See People v. Kelly</u>, 17 Cal.3d 24 (1976); <u>Frye v. United States</u>, 293 F. 1013 (D.C. Cir. 1923).  However, the <u>Kelly/Frye</u> test is a California rule for the admission of evidence.  <u>See Smith v. Curry</u>, No. CIV S-03-1871 LKK KJM P, 2007 WL 841747, at *22 (E.D. Cal. Mar. 20, 2007) ("The <u>Kelly/Frye</u> rule is a creature of California law, based on a state court ruling adopting the reasoning of a federal circuit court, which was not based on the United States Constitution.").  Federal habeas relief is unavailable for alleged errors in the application of a state's rules of evidence.  <u>See Maquiz v. Hedgpeth</u>, 907 F.3d 1212, 1217 (9th Cir. 2018); <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919 (9th Cir. 1990).  Nevertheless, Petitioner has not shown the <u>Kelly/Frye</u> test is applicable to his case.  "Under <u>Kelly/Frye</u>, 'the proponent of evidence derived from a new scientific methodology must satisfy three prongs, by showing, first, that the reliability of the new technique has gained general acceptance in the relevant scientific community, second, that the expert testifying to that effect is qualified to do so, and, third, that correct scientific procedures were used in the particular case.'"  <u>Cooper v. Brown</u>, 510 F.3d 870, 944 n. 28 (9th Cir. 2007) (quoting <u>People v. Roybal</u>, 19 Cal.4th 481, 505 (1998)).  Petitioner has not shown the DNA evidence was the kind of "new scientific methodology" of concern under the <u>Kelly/Frye</u> analysis or that the <u>Kelly/Frye</u> test applies to address alleged defects in the chain of custody of the evidence at issue.

To the extent Petitioner further argues the trial court violated his right to confront witnesses against him by refusing to allow Nurse Zuniga to return to the stand to clarify which officer took possession of the rape kit (FAP at 28) and

1    In its decision on direct appeal, the California Court of Appeal accurately detailed the

2    factual background underlying Petitioner's claims, as follows:

3        [Carey] Zuniga, the forensic nurse who examined Doe immediately after

4        the assault, testified that she swabbed Doe's cheek to obtain a clear sample of her

5        DNA, and then used swabs on various points on Doe's body in the expectation of

6        collecting the DNA of her assailant.  Zuniga further testified that once the swabs

7        were dry, she packed them into boxes and envelopes that she personally labeled.

8        She then sealed the boxes and envelopes and, along with the photographs she had

9        taken and the drawing she had marked, placed them inside a sexual assault kit,

10       sealed the kit and initialed the seal.  Zuniga testified she gave the kit to "the

11       officer," whom she identified as Officer Orosco.  During her testimony, she was

12       shown the photographs and drawing from the kit and identified them as the ones

13       she had sealed inside it.

14       Officer Orosco testified he left the hospital to take Doe back to her family

15       before the sexual assault kit was ready to be transported, and that he asked Officer

16

17   by allowing Los Angeles County Sheriff's Department criminalist Maryam Nickooshiam to testify that she retrieved

18   the victim's DNA sample from the crime lab storage in the absence of evidence identifying who delivered the
     sample to the crime lab (Objections at 5), his claim fails.  Regardless of whether Petitioner could make out a
     violation of his right to confront witnesses, any alleged error was harmless.  See Delaware v. Van Arsdall, 475 U.S.

19   673, 684, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986) (confrontation violations subject to harmless error analysis).  In
     light of the evidence of Petitioner's guilt discussed herein, including the non-DNA evidence establishing Petitioner's

20   identity as the rapist and the testimony of Officer Orozco and Officer Earl, which highlighted the discrepancy
     regarding who took custody of the rape kit from Nurse Zuniga (2 RT at 1280, 1282-83), Petitioner cannot show his

21   inability to further cross-examine Nurse Zuniga or the absence of evidence regarding who delivered the victim's
     DNA sample to the crime lab had "a substantial and injurious effect on the jury's verdict."  Brecht v. Abramson, 507

22   U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993).

23   Finally, in his Objections, Petitioner adds an additional nuance to his claim by asserting that his confrontation rights
     were violated when criminalist Nickooshiam offered impermissible hearsay testimony when she stated she matched

24   Petitioner's DNA to DNA recovered from the victim without evidence establishing the DNA sample she tested
     belonged to Petitioner.  (Objections at 2-4.)  However, criminalist Nickooshiam did not testify the DNA sample she

25   tested belonged to Petitioner or that the DNA recovered from the victim matched Petitioner's DNA.  Rather,
     criminalist Nickooshiam testified that the DNA sample she tested belonged to an individual named Joseph Davall

26   and that sample matched the DNA from the victim's rape kit.  (2 RT at 1290-93.)  Moreover, criminalist
     Nickooshiam did not offer any testimony regarding statements or actions by non-testifying witnesses regarding the

27   collection of Joseph Davall's DNA sample or the delivery of that sample to the crime lab.  Nevertheless, even if
     Petitioner could make out a confrontation claim based on criminalist Nickooshiam's testimony in light of the

28   absence of proof establishing to whom the DNA sample belonged, any error was harmless for the same reasons
     discussed above with respect to Petitioner's other confrontation arguments.

Garrett Earl to pick up the kit.  Officer Earl testified he took the kit from the nurse and transported it to the station to be booked into evidence.  He filled out the property control card, and prepared a report stating he had picked up the kit and booked it.

After Zuniga testified she gave the sexual assault kit to Officer Orosco, but before the officers clarified that it was Officer Earl who transported the kit from the hospital to the police station, the prosecutor explained that she did not plan to call the person who took the kit from the station to the Sheriff's Department crime lab because "Officer Earl will be able to indicate the manner in which it was sealed" and [criminalist Maryam] Nickooshiam "will testify . . . that she received it still sealed."  Defense counsel objected, contending this was an inadequate foundation and would not establish the chain of custody.  She also indicated that properly establishing the transfer from Zuniga to police officials would require the prosecution to re-call the nurse to "say who she gave it to."  The court stated:  "I'm not following you . . . .  If you think that there is a break in the chain, you can certainly inquire, and you can certainly argue to the jurors that the evidence is not trustworthy because there was . . . a break in the chain. . . .  But before [we] get to that, I have to hear what the issue is. . . .  [I]f I understand, it didn't go from . . . Zuniga to Orosco[] . . . .[¶] . . . [¶]  It went directly from Zuniga to Earl[.]"

The next morning, before witnesses were called, defense counsel asked for "a continuing objection in regards to lack of foundation and chain of custody in regards to the DNA expert testifying about the DNA samples that they received," again focusing on the fact that "[w]e heard testimony that the DNA samples were taken by . . . nurse Zuniga and then given to an officer named Orosco."  The prosecutor confirmed that Officer Earl would testify that he received the sealed sexual assault kit from Zuniga and booked it, and that Nickooshiam would testify she received and analyzed the sealed kit, but that no other witnesses would be

called to establish chain of custody.  Defense counsel stated she was "making an objection as to that."  The court noted the objection.  Officers Orosco and Earl testified as described above.  The prosecution then called Nickooshiam.

Prior to describing the testing and analysis performed on the DNA samples, Nickooshiam was asked if she received a sexual assault kit from "Jane Doe is what we're calling her . . . ."  Nickooshiam asked for the lab number, checked her notes and responded "Yes.  I did receive that item."  She said it came from the crime lab's "evidence control section," and that when she picked it up, it was in an envelope, "intact, closed, sealed with red evidence tape, and initialed."  A short time later the prosecutor asked Nickooshiam to confirm that she received "the [sexual assault] kit on Jane Doe" and Nickooshiam confirmed she had.  Nickooshiam also was asked if she "receive[d] a buccal reference sample from Joseph Davall."  She responded she did, and went on to explain the testing she performed to match the reference sample obtained from [Petitioner] to the second DNA profile found on the swabs from the sexual assault kit assembled by Zuniga.  Defense counsel raised no objection to any of the questions asked of the criminalist by the prosecutor.  Nor did she cross-examine Nickooshiam.

(Lodgment 8 at 10-13.)

**2.     Chain of Custody**

**a.     Background**

First, Petitioner's argument regarding the chain of custody of the DNA evidence does not warrant habeas relief.[36]

///

---

[36] Because the portion of Petitioner's claim related to evidence of the DNA sample purportedly belonging to Petitioner is subject to de novo review, this Court applies the same standard to the entire claim.  This Court concludes, however, that Petitioner's claim also fail under AEDPA review because "there are no controlling Supreme Court decisions holding that the admission of evidence based on an inadequate chain of custody violates due process."  See Hall v. Cate, No. CV 12-4770-JGB (SP), 2014 WL 3587509, at *8 (C.D. Cal. July 16, 2014) (citing Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) ("The Supreme Court . . . has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.")).

13

1

        **b.**     **State Court Opinion**

2

      To the extent the California Court of Appeal addressed the merits of Petitioner's claim, it

3

held on direct appeal that "the prosecutor established all vital links in the chain of custody of the

4

[victim's] DNA samples."  (Lodgment 8 at 13-18.)

5

        **c.**     **Analysis**

6

      To the extent Petitioner argues the admission of the evidence violated state law regarding

7

chain of custody, his claim is not cognizable on federal habeas review.[37]

8

      Petitioner's claim also fails to the extent he asserts a claim cognizable here.

9

      First, Petitioner cannot show the alleged defects in the chain of custody of the DNA

10

evidence rendered it inadmissible.  Under both state and federal law, the prosecution can

11

establish an adequate chain of custody by introducing proof from which the jury can conclude

12

the evidence has not been altered.[38]  Similarly, under both state and federal law, defects in the

13

chain of custody go to the weight the jury might afford the evidence rather than its

14

admissibility.[39]

15

      Here, the prosecution established an adequate chain of custody from which the jury could

16

have concluded the evidence had not been altered and, thus, properly received the evidence for

17

consideration of what weight it should be afforded.  Nurse Zuniga testified that she collected and

18

packaged the specimens from the sexual assault examination, sealed the evidence with tape and

19

affixed her signature, and provided the sexual assault kit to law enforcement, regardless of which

20

21

[37] See Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991); see also Wilson v. Corcoran, 562 U.S. 1, 5, 131 S. Ct. 13, 178 L. Ed. 2d 276 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.") (original emphasis).

22

23

[38] See United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991) (prosecution must introduce sufficient proof so that a reasonable juror could find that the evidence is in substantially the same condition as when it was taken into custody); People v. Lucas, 60 Cal.4th 153, 285 (2014) (prosecution can establish chain of custody with proof that the evidence has not been altered and that there is no unaccounted-for vital link in the chain of possession), disapproved of on other grounds by People v. Romero & Self, 62 Cal. 4th 1 (2015).

24

25

26

[39] See Melendez-Diaz v. Massachusetts, 557 U.S. 305, 311 n.1, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009) ("gaps in the chain of custody of evidence normally go to the weight of the evidence rather than its admissibility" and "[i]t is up to the prosecution to decide what steps in the chain of custody are so crucial as to require evidence"); United States v. Matta-Ballesteros, 71 F.3d 754, 769 (9th Cir. 1995) ("a defect in the chain of custody goes to the weight, not the admissibility, of the evidence introduced"); People v. Schultz, 10 Cal.5th 623, 662 (2020) ("any presumed defect in the chain of custody would not have rendered [the] testimony entirely inadmissible but would have gone to the weight of her testimony").

27

28

1   officer took custody of the kit.  (2 RT at 1251-52.)  Claremont Police Officer Garrett Earl then

2   testified he collected the sexual assault kit from Nurse Zuniga and booked it into evidence.  (2

3   RT at 1282-83.)  Finally, criminalist Nickooshiam testified that when she retrieved the sexual

4   assault kit from the laboratory's evidence control section for testing, it was sealed with evidence

5   tape and initialed.  (2 RT at 1285-86.)  She further testified she received a DNA sample for an

6   individual named Joseph Davall.  (2 RT at 1290.)  While the criminalist did not testify to the

7   source of Davall's DNA sample or the condition it was in when she received it, she did not

8   suggest there was anything out of the ordinary about the sample despite being subject to cross-

9   examination by the defense.

10      Ultimately, then, to show the admission of the DNA evidence violated due process

11   Petitioner must show there were "*no* permissible inferences the jury" could have drawn from it.[40]

12   Here, however, the DNA evidence allowed for the permissible inference that Petitioner was the

13   perpetrator.  In light of such a permissible inference from the evidence, its admission could not

14   have violated due process.

15      **3.      Sufficiency of the Evidence**

16      To the extent Petitioner argues the evidence against him was insufficient because the

17   prosecutor did not establish the DNA sample tested by the criminalist was his, his claim still

18   fails.

19          **a.      Legal Standard**

20      The Fourteenth Amendment's Due Process Clause guarantees that a criminal defendant

21   may be convicted only "upon proof beyond a reasonable doubt of every fact necessary to

22   constitute the crime with which he is charged."[41]  In <u>Jackson v. Virginia</u>,[42] the United States

23   Supreme Court announced the federal standard for determining the sufficiency of the evidence to

24   support a conviction.  Under <u>Jackson</u>, "[a] petitioner for a federal writ of habeas corpus faces a

25

26   _____

    [40] <u>Boyde v. Brown</u>, 404 F.3d 1159, 1172 (9th Cir.), as amended on reh'g, 421 F.3d 1154 (9th Cir. 2005) (emphasis
27   in original; citation and internal quotations omitted).

    [41] <u>In re Winship</u>, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).
28
    [42] 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."[43]  The Supreme Court has held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[44] "Put another way, the dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'"[45]

When the factual record supports conflicting inferences, the federal court must presume, even if it does not affirmatively appear on the record, that the trier of fact resolved any such conflicts in favor of the prosecution, and the federal court must defer to that resolution.[46] Additionally, "[c]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction."[47]

### b.    Analysis

Petitioner does not contend the evidence failed to establish the elements of the crimes charged.  Rather, he argues the evidence was insufficient to prove his identity as the perpetrator in light of the fact that the prosecutor did not prove that it was Petitioner's DNA sample that was matched to the DNA of the perpetrator.  However, even setting aside the DNA evidence, the prosecutor presented sufficient evidence to prove Petitioner was the assailant.

Before the crimes, the victim saw a man walking in her neighborhood.  (2 RT at 919-20.) The man caught her attention because she had never seen him in the neighborhood before and he was acting "weird."  (2 RT at 920-21.)  The victim gained an even better look at this man when she was arriving home and he passed in front of her car.  (2 RT at 923.)  Then, when the victim was attacked in her bed, she opened her eyes and saw an assailant she believed to be the man she had seen outside.  (2 RT at 931, 933-34.)  At trial, the victim identified Petitioner as this man.  (2

---

[43] Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).

[44] Jackson, 443 U.S. at 319.

[45] Chein v. Shumsky, 373 F.3d 978, 982-83 (9th Cir. 2004) (en banc) (quoting Jackson, 443 U.S. at 318).

[46] Jackson, 443 U.S. at 326.

[47] Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995) (citation omitted).

RT at 957-58.)  The victim's identification was further corroborated by license plate surveillance data, which placed Petitioner's license plate less than a mile from the victim's home around the time of the crime.  (2 RT at 1203-09.)  Finally, Petitioner's own words corroborated the victim's identification of him.  During the booking process after his arrest, Petitioner spontaneously stated to the officer that he knew why the detective was angry with him and then explained, "He must have two daughters that didn't like what I did."  (2 RT at 1214.)

This evidence, even without the benefit of the DNA evidence, was sufficient to support the jury's finding that Petitioner was the rapist.[48]  Accordingly, the evidence of Petitioner's guilt was sufficient despite the prosecutor's failure to prove Petitioner was the source of the DNA tested by the criminalist.

For all the foregoing reasons, habeas relief is not warranted on Claims One, Four, and Five.

## B.     Suggestive Identification

### 1.     Background

In Claim Two, Petitioner argues the victim's in-court identification of Petitioner at trial should have been excluded because it was tainted by her previous identification at the preliminary hearing, which was obtained through an impermissibly suggestive procedure.  (FAP at 5-6, 22-24.)

### b.     Legal Standard

"[C]onvictions based on eyewitness identification at trial following a pretrial identification [] will be set aside on [the basis of the pretrial identification] only if the [pretrial] identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."[49]  "It is the likelihood of misidentification which violates a defendant's right to due process . . . ."[50]  Thus, to successfully challenge identification

---

[48] Oliva v. Hedgpeth, 600 F.Supp.2d 1067, 1086-88 (C.D. Cal. 2009) (even relatively weak eyewitness identifications amount to sufficient evidence to prove identity and noting the identification of the petitioner by a single witness can be sufficient evidence to support the conviction).

[49] Simmons v. United States, 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968) (considering a scenario where the pretrial identification was by photograph during the police investigation).

[50] Neil v. Biggers, 409 U.S. 188, 198, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972).

testimony, a defendant must show the pre-trial identification procedures were so unnecessarily suggestive as to give rise to a substantial likelihood of misidentification.[51]

Even if a pretrial procedure is impermissibly suggestive, automatic exclusion of identification testimony is not required.[52]  Rather, the court must determine "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive."[53]  Five factors must be considered in determining whether in-court identification testimony is sufficiently reliable: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the pretrial identification; and (5) the length of time between the crime and the pretrial identification.[54]

    **c.**    **Analysis**

The precedent on suggestive identifications is primarily aimed at "deter[ing] police from rigging identification procedures, for example, at a lineup, showup, or photograph array[,]" and does not "extend[] pretrial screening for reliability to cases in which the suggestive circumstances were not arranged by law enforcement officers."[55]  Moreover, the Ninth Circuit has explained that "[t]he bare fact that a confrontation was suggestive does not alone establish constitutional error.  The confrontation must be impermissibly or unduly suggestive under the totality of the circumstances."[56]  While in-court identifications may be subject to some suggestion, "the suggestive character of courtroom logistics [is] not *unnecessarily* suggestive."[57]

---

[51] Perry v. New Hampshire, 565 U.S. 228, 239, 132 S. Ct. 716, 181 L. Ed. 2d 694 (2012); Biggers, 409 U.S. at 198.

[52] Perry, 565 U.S. at 239; Manson v. Brathwaite, 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); Biggers, 409 U.S. at 199.

[53] Biggers, 409 U.S. at 199; Perry, 565 U.S. at 239; Brathwaite, 432 U.S. at 114.

[54] Perry, 565 U.S. at 239 n.5; Brathwaite, 432 U.S. at 114; Biggers, 409 U.S. at 199.

[55] See Perry, 565 U.S. at 232-33; see also id. at 248 ("[T]he Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement."); Schroeder v. Premo, 714 F.App'x 666, 669 (9th Cir. 2017) ("Under Perry, however, only police-created impermissibly suggestive circumstances implicate due process concerns and thus require a reliability assessment by the trial court.").

[56] Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (citing Biggers, 409 U.S. at 196).

[57] Id. (citing Baker v. Hocker, 496 F.2d 615, 617 (9th Cir. 1974)).

Thus, "[w]hen no improper law enforcement activity is involved, . . . it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel . . . , vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt."[58]

Here, Petitioner cannot establish a due process violation because the victim's preliminary hearing identification of Petitioner did not involve police conduct.[59]  Furthermore, the safeguards highlighted by the Supreme Court in Perry worked to protect Petitioner from an unduly suggestive identification both at his preliminary hearing and at trial.  Petitioner was represented at the preliminary hearing and at trial by counsel, who cross-examined the victim. (CT at 24-31; 2 RT at 958.)  Moreover, the jury was specifically instructed on the prosecution's burden to prove Petitioner guilty beyond a reasonable doubt and how it should evaluate eyewitness testimony.  (CT at 136, 149, 151-55, 160, 169-70, 173, 176, 178.)

Nevertheless, even under the Bigger's factors for determining the admissibility of an identification resulting from suggestive procedures, exclusion of the victim's in-court identification was not required here.  First, the victim had a substantial opportunity to view the perpetrator before and at the start of the attack.  She observed the man walking in her neighborhood and paid particular attention to him because he seemed out of place and appeared to be acting "weird."  (2 RT at 919-23.)  Then, when she opened her eyes at the beginning of the attack she was able to see the perpetrator, who was straddling her on her bed.  (2 RT at 931-34.)  Second, the victim paid close attention to the man, particularly as she watched him walking down the street and moving in front of her car as she exited.  (2 RT at 919-23.)  Finally, although

---

[58] Perry, 565 U.S. at 233; see also United States v. Whatley, 719 F.3d 1206, 1216 (11th Cir. 2013) ("Perry makes clear that, for those defendants who are identified under suggestive circumstances not arranged by police, the requirements of due process are satisfied in the ordinary protections of trial.").

[59] Perry, 565 U.S. at 232-33, 248; Whatley, 719 F.3d at 1216; see also United States v. Thomas, 849 F.3d 906, 911 (10th Cir.) ("Mr. Thomas contends that the in-court identification was unduly suggestive because he was the only African-American man at counsel table, the eyewitness had never been asked to identify the robber before, and her in-court identification occurred more than 19 months after the robbery in Count 2.  These circumstances, however, were not the product of improper conduct by law enforcement . . . .  Of course, it is customary for defendants to sit at counsel table, and defendants do not have a constitutional right to a pretrial identification."), cert. denied, --- U.S. ----, 138 S. Ct. 315, 199 L. Ed. 2d 208 (2017).

the record does not reveal Petitioner's physical characteristics to determine whether the victim gave an accurate description of her attacker and it appears the victim first identified Petitioner at the preliminary hearing that occurred a number of months after the attack, the victim showed no hesitancy when identifying Petitioner at the preliminary hearing and at trial, instead appearing certain about her identification.  (CT at 23; 2 RT at 957-58.)

Under these circumstances, Petitioner cannot establish that the victim's in-court identification at trial was the product of an impermissibly suggestive procedure so as to render the identification inadmissible or that its admission was otherwise improper.[60]  Accordingly, habeas relief is not warranted on Claim Two.

## C.    Ineffective Assistance of Counsel

### 1.    Background

In Claim Three, Petitioner argues his trial counsel was ineffective for failing to (1) object to the DNA sample allegedly belonging to Petitioner, (2) object to the suggestive identification, (3) provide expert testimony, and (4) have a sample of Petitioner's DNA collected and tested by an independent laboratory.  (FAP at 6, 24-28.)[61]  In Claim Six, Petitioner argues his appellate counsel was ineffective for not raising on direct appeal the assertions of ineffective assistance of trial counsel Petitioner now raises here.  (FAP at 7, 31.)[62]

### 2.    State Court Opinion

The California Court of Appeal rejected Petitioner's ineffective assistance of counsel claims on habeas review, finding Petitioner had not presented a prima facie case of ineffective assistance.  (Lodgment 19.)

---

[60] See Strickland v. Small, 444 F.App'x 178, 179 (9th Cir. 2011) ("Although the witnesses did have an opportunity to see [the petitioner] at the preliminary hearing, that was not unnecessary or impermissible, and cannot be said to have resulted in a 'very substantial likelihood of irreparable misidentification.'" (footnotes omitted)); see Lynch v. Gipson, No. CV 11-8439-JVS (SP), 2015 WL 4162513, at *11-*12 (C.D. Cal. Mar. 17, 2015) (rejecting claim of ineffective assistance of counsel for failing to object to allegedly suggestive identification procedure where witness identified the petitioner at the preliminary hearing while dressed in jail clothing because such a procedure was not unduly suggestive and because the identification was otherwise reliable under the totality of the circumstances).

[61] In a related portion of Claim Five, Petitioner argues the trial court abused its discretion by denying Petitioner's motion for new trial based on ineffective assistance of counsel.  (FAP at 6, 30.)  As discussed below, Petitioner fails to establish that his trial counsel was ineffective.  Accordingly, this portion of Claim Five necessarily fails.

[62] This Court addresses Petitioner's claim despite his assertion that he "do[es] not raise this claim here for relief, [but] only . . . to give reason for not raising ineffective assistance of counsel on direct appeal."  (FAP at 31.)

### 3.   Legal Standard

In order to prevail on his ineffective assistance of counsel claim under the United States Supreme Court decision in <u>Strickland v. Washington</u>, Petitioner must prove two things:  (1) that counsel's performance was deficient, and (2) that he was prejudiced by the deficient performance.[63]  A court evaluating an ineffective assistance of counsel claim does not need to address both elements of the test if a petitioner cannot prove one of them.[64]

To prove deficient performance, a petitioner must show that counsel's performance was below an objective standard of reasonableness.[65]  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[66]  Only if counsel's acts or omissions, examined in light of all the surrounding circumstances, fell outside this "wide range" of professionally competent assistance will petitioner prove deficient performance.[67]  Proof of deficient performance does not require habeas corpus relief if the error did not result in prejudice.[68]  Accordingly, a petitioner must also show that, but for counsel's unprofessional errors, the result of the proceedings would have been different.[69]

The <u>Strickland</u> standard also applies to claims of ineffective assistance of appellate counsel based on the failure of counsel to raise particular claims on appeal.[70]  A habeas petitioner must show that, but for appellate counsel's failure to raise the relevant claims, there is a reasonable probability that the petitioner would have been successful on appeal.  In the absence of such a showing, neither <u>Strickland</u> prong is satisfied.[71]  Appellate counsel does not have a constitutional duty to raise every non-frivolous issue a defendant requests.[72]  Counsel "must be

---

[63] <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[64] <u>Id.</u> at 697.

[65] <u>Id.</u> at 687-88.

[66] <u>Id.</u> at 689.

[67] <u>Id.</u> at 690.

[68] <u>Id.</u> at 691.

[69] <u>Id.</u> at 694.

[70] <u>Smith v. Robbins</u>, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000).

[71] <u>See</u> <u>Pollard v. White</u>, 119 F.3d 1430, 1435-37 (9th Cir. 1997).

[72] <u>Jones v. Barnes</u>, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983).

1  allowed to decide what issues are to be pressed."[73]  Otherwise, the ability of counsel to present

2  the client's case in accord with counsel's professional evaluation would be "seriously

3  undermined."[74]  There is, of course, no obligation to raise meritless arguments on a client's

4  behalf.[75]  The weeding out of weaker issues is widely recognized as one of the duties of effective

5  appellate lawyers, and counsel is not deficient for failing to raise a weak issue.[76]  In order to

6  prove prejudice in this context, Petitioner must show that he probably would have been

7  successful on appeal but for appellate counsel's errors.[77]  A court evaluating an ineffective

8  assistance of appellate counsel claim does not need to address both components of the test if the

9  petitioner cannot sufficiently prove one of them.[78]

10           **4.      Trial Counsel**

11                 **a.      Petitioner's DNA Sample**

12         Even assuming trial counsel should have objected to the testimony regarding Petitioner's

13  DNA sample or otherwise insisted that the prosecutor produce proof of the sample's source,

14  Petitioner cannot show he was prejudiced by trial counsel's representation.  As discussed above,

15  compelling evidence supported a finding that Petitioner was the perpetrator, even setting aside

16  the DNA evidence.  Thus, the result of the proceedings would not have been different but for

17  trial counsel's failure to object to the testimony regarding Petitioner's DNA sample.

18                 **b.      Suggestive Identification**

19         Next, Petitioner's claim fails to the extent he argues his trial counsel was ineffective for

20  failing to object to the identification evidence on the basis of the allegedly impermissible

21  identification procedure.  As explained above, the identification evidence was not obtained

22  through an impermissibly suggestive procedure and, thus, this did not form a legitimate basis

23

---

24  [73] Id.

25  [74] Id.

26  [75] See Wildman v. Johnson, 261 F.3d 832, 840 (9th Cir. 2001) ("[A]ppellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal.").

27  [76] Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989).

28  [77] Id. at 1434 n.9.

[78] See Strickland, 466 U.S. at 697.

1  upon which trial counsel could have objected.  Trial counsel was not ineffective for failing to

2  lodge a meritless objection.[79]

3             c.      **Expert Testimony and Independent DNA Testing**

4         Lastly, Petitioner's claim fails to the extent he argues his trial counsel was ineffective for

5  failing to obtain a DNA expert for the defense and for failing to collect a DNA sample from

6  Petitioner to have tested by an independent lab.

7         "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision

8  that makes particular investigations unnecessary."[80]  However, Petitioner has not established that

9  trial counsel could have obtained a DNA expert who would have testified favorably for the

10 defense.  Similarly, Petitioner has not shown that independent DNA testing would have shown

11 Petitioner's DNA did not match that of the assailant.  Such speculative claims are insufficient to

12 establish ineffective assistance of counsel.[81]

13            4.      **Appellate Counsel**

14        In addition, there is no merit to Petitioner's claim of ineffective assistance of appellate

15 counsel for failing to challenge on direct appeal trial counsel's representation.  As explained

16 above, all of Petitioner's ineffective assistance of trial counsel claims lack merit.  His appellate

17 counsel was not ineffective for failing to present meritless claims.[82]

18 **D.     Cumulative Error**

19        Finally, in Claim Seven, Petitioner argues the cumulative impact of all the errors alleged

20 herein resulted in a violation of his rights to due process and a fair trial.  (FAP at 7, 31-32.)

21

22 _____

23 [79] See Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005) (counsel not ineffective for failing to make meritless argument).

24 [80] Strickland, 466 U.S. at 691.

25 [81] See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) (conclusory allegations lacking factual support do not provide a sufficient basis for habeas corpus relief); see also Bragg v. Galaza, 242 F.3d 1082, 1088-89 (9th Cir. 2001) (mere speculation that further investigation might lead to evidence helpful to petitioner was insufficient to demonstrate

26 ineffective assistance of counsel); Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000) (denying claim of ineffective assistance of counsel for failing to call defense witness where petitioner did not present affidavit from potential

27 witness stating witness was able to offer testimony helpful to the defense).

28 [82] Wildman v. Johnson, 261 F.3d 832, 840 (9th Cir. 2001) ("[A]ppellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal.").

"The cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal."[83] Here, this Court has found no prejudicial error.  Thus, there is no prejudice to accumulate.[84]

Accordingly, the state courts' rejection of Petitioner's claim was not contrary to, or an unreasonable application of, federal law.  Habeas relief is not warranted on Claim Seven.

## VII.

## RECOMMENDATION

IT THEREFORE IS RECOMMENDED that the District Court issue an Order:  (1) approving and accepting this Report and Recommendation; and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED:   November 15, 2021

_____
HONORABLE LOUISE A. LAMOTHE
United States Magistrate Judge

---

[83] Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007) (citing Chambers v. Mississippi, 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)).

[84] See Hayes v. Ayers, 632 F.3d 500, 524 (9th Cir. 2011) ("Because we conclude that no error of constitutional magnitude occurred, no cumulative prejudice is possible.").